**Affirmed and Memorandum Opinion filed November 16, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00440-CV

---

## IN THE INTEREST OF A.F.G., B.N.G., A.M.G., AND J.L.G. JR., CHILDREN

---

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2013-57363**

---

## NO. 14-17-00463-CV

---

## IN THE INTEREST OF S.N.T.S, A CHILD

---

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2015-70032**

# M E M O R A N D U M   O P I N I O N

Appellant, V.I.S. (Mother), appeals two trial court final decrees terminating her parental rights.[1] One final decree terminates Mother's parental rights to A.F.G. (Ana), B.N.G. (Bonnie), A.M.G. (Andrea), and J.L.G., Jr. (Julian). The other terminates Mother's parental rights to S.N.T.S. (Sara).[2] Both appoint the Department of Family and Protective Services as sole managing conservator of the children. Mother challenges the sufficiency of the evidence to support the trial court's findings terminating her parental rights and appointing the Department managing conservator. We affirm.

## BACKGROUND[3]

The Department received a referral on November 18, 2015 related to Mother and Bonnie. Bonnie, who was seven-years-old at the time, presented to school with a dark red bruise on her left eye and cheek and two small bruises to the left upper eye with shattered red dots under the left eye. Bonnie stated her "dad," J.G.T.[4] (Jacob), hit her because she fell asleep doing homework and Mother told her to say she hit her head on the door.

A Department investigator met with Bonnie and Ana, who was also seven-years-old, at school. After meeting with the two girls at school, the investigator went to the home to meet with the rest of the family. Sara, who was one-year-old, was

---

[1] As the factual background and legal issues substantially overlap, we consider these appeals together.

[2] We use pseudonyms to refer to appellant, her children, and family members in this case. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

[3] The Department failed to file a brief in either appeal. We accept as true the facts stated in appellant's briefs, so long as they are supported by record references. Tex. R. App. P. 38.1(g).

[4] Bonnie's biological father is J.L.G. (John). Mother and Jacob were living together with the children when the Department became involved in this case.

2

observed crawling around the room. Sara appeared healthy and had no visible marks or bruises.

Andrea, who was four-years-old, did not respond to questions asked by the investigator. The investigator noticed Andrea limping and dragging her right leg. When asked about Andrea's limp, Mother stated she was going to get her looked at by a doctor.

Julian, who was two-years-old, was in a playpen. The investigator noticed vomit coming out of Julian's mouth. Julian did not move or respond when the investigator spoke to him. The investigator asked Mother to pick Julian up. Mother picked Julian up and removed some of his clothing. The investigator noticed that Julian was severely underweight and had a rash on his abdomen. Mother indicated the rash was the result of a new body wash.

While in the home, the investigator observed that Andrea and Julian were overdressed for the climate of the home. When clothing was removed, both children were observed to be very thin. Mother's father (Grandfather) arrived at the home while the investigator was present. Grandfather stated he had no concerns about the children, except their weight being low. The investigator requested the children be taken to the hospital.

The children were originally taken to Northwest Medical Center. They were then transported to Texas Children's Hospital. Ana and Bonnie were well-appearing and discharged into the Department's care the same day. Andrea and Julian were admitted to Texas Children's Hospital on November 20 and diagnosed with severe malnutrition.

On November 23, the Department was named temporary managing conservator of Ana, Bonnie, Andrea, Julian, and Sara due to immediate danger from

3

physical and medical neglect. That same day, the Department filed two petitions for termination in suits affecting the parent-child relationship. The Department sought termination of Mother's parental rights to Ana, Bonnie, Andrea, and Julian in one[5] and sought termination of Mother's parental rights as to Sara in another.[6] The Martins, the current caregivers of Ana, Bonnie, and Sara, intervened in both lawsuits. The Lees, the current caregivers of Andrea and Julian, intervened in the first lawsuit.

During a jury trial, a Department investigator testified about her investigation at Texas Children's Hospital on November 20. When speaking to the investigator at the hospital, Mother did not think anything was wrong with Andrea and Julian. Mother stated she fed the children daily and gave Andrea and Julian PediaSure. She stated she was a good mother and her children are normal. A Harris County Sheriff's Officer testified that Mother made similar statements to him about the children being regularly fed and her being a good mother. The Officer testified that criminal charges had been accepted against Mother for injury to a child by omission as to Andrea and Julian.

The doctor who led the child abuse team also testified at trial. The doctor testified Andrea and Julian were profoundly emaciated children who were unable to sit up in a bed with their own muscle control. Andrea had to be held up in a sitting position. Further, Julian maintained a position of permanent contracture and had a hard time straightening out his arms and legs. For Julian to sit up, his head and neck

---

[5] The Department also sought to terminate John's parental rights as to his biological children, Ana, Bonnie, Andrea, and Julian, in this petition. The termination of John's parental rights is not before us on appeal.

[6] The Department also sought termination of Jacob's parental rights as to Sara, his biological child, in this petition. The termination of Jacob's parental rights is not before us on appeal.

had to be held. Julian's hair was also shedding. Julian weighed 16.7 pounds when admitted on November 20, while prior medical records show he had weighed 17.6 pounds the year before. Both Andrea's and Julian's skin was in bad shape indicating a micronutrient deficiency.

Andrea and Julian had bruises and broken bones which the doctor discussed. Andrea had bruising to her jaw and ear and a broken forearm and hand. The doctor suspected the broken hand was a defensive wound. Julian had bruising to his eyelid and ear and a healing rib fracture. Julian's contracted position suggested he had been in a confined space for prolonged periods of time. Additionally, Julian had a decubitus ulcer (bed sore) on his lower back. Neither child had subcutaneous fat stores.

The doctor stated Andrea and Julian were victims of maltreatment; they were physically abused and starved. She testified that no underlying medical conditions were found which might explain their appearance. Further, she stated Mother's history of this happening over a few months is unbelievable.

As a result of Mother's pending criminal charges, Mother often invoked her right against self-incrimination during the jury trial and did not testify during the bench trial. Accordingly, Mother's testimony does not explain how Andrea's and Julian's malnutrition developed.

The Department called witnesses to testify regarding the children's current placements and well-being. Ana, Bonnie, and Sara had been placed with the Martins where they had been living over a year. Both Ana and Bonnie participated in psychosocial and forensic interviews and therapy related to emotional and physical abuse. Ana and Bonnie were stated to be good students.

Andrea and Julian were placed with the Lees where they have been living over

a year. Andrea has had therapy related to her medical issues, a psychosocial evaluation, and therapy related to emotional and physical abuse. Julian has participated in physical, speech, and occupational therapy related to his medical issues.

The Department caseworker and Child Advocate testified the children were flourishing in their current placements. The caseworker stated the placements were meeting all of the children's physical and emotional needs.

The caseworker and Child Advocate also testified regarding potential relative placements for the children. Mother had submitted her mother (Grandmother) and Grandfather as potential relative placements. The Department determined neither was a viable option because both observed Andrea and Julian in their emaciated state without taking action. The Department did conduct a home study as to Grandfather and the court denied placement with Grandfather. Additionally, Grandmother reported to the Department that she did not think anything was wrong with Andrea and Julian.

The Martins and Lees testified about how well the children were doing in their respective homes. The Martins and Lees planned to adopt the children currently placed with them. Both families also testified about efforts to keep the siblings involved with each other's lives. Specifically, the families testified about visiting weekly, on holidays, and going on vacation together.

After a jury trial, Mother's parental rights to Ana, Bonnie, Andrea, and Julian were terminated under Family Code sections 161.001(b)(1)(D) and (E).[7] The trial

---

[7] The numbering of section 161.001 changed effective April 2, 2015. Section 161.001(1) is now section 161.001(b)(1). Although the trial court's judgment cites the previous version, Mother's cases began after April 2, 2015, and so the current version applies to Mother's cases and that is the version to which we refer in this opinion.

court also found termination of Mother's parental rights was in the best interest of the children. The Department was appointed sole managing conservator of the children.

Subsequently a bench trial was held regarding Mother's parental rights to Sara. At the conclusion of the bench trial, Mother's parental rights to Sara were terminated under Family Code sections 161.001(b)(1)(D), (E), and (M). The trial court also found termination of Mother's parental rights was in the best interest of the child. The Department was appointed sole managing conservator of Sara.

## ANALYSIS

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West Supp. 2016); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

### A. Standard of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.–Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See*

7

Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

B.  **Predicate Termination Grounds – Ana, Bonnie, Andrea, and Julian**

Mother challenges the legal and factual sufficiency of the evidence supporting

the trial court's judgment terminating her parental rights to Ana, Bonnie, Andrea, and Julian under sections 161.001(b)(1)(D) and (E) of the Texas Family Code. Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We first evaluate whether termination was proper under section 161.001(b)(1)(E).

Termination may be ordered under subsection E, if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). Under subsection E, the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.–Houston [14th Dist.] 2005, no pet.). In this context, endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.–Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477. A parent's failure to provide a child with food endangers a child. *See In re G.H.*, No. 02-17-00193-CV, 2017 WL 4683925, at *8 (Tex. App.—Fort Worth Oct. 19, 2017, no pet. h.) (mem. op.).

Termination under subsection E must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.–Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat

of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re J.O.A.*, 283 S.W.3d at 345 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *In re J.O.A.*, 283 S.W.3d at 345 ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). Further, neglect can be as dangerous to a child's emotional or physical health as intentional abuse. *In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Additionally, evidence as to a parent's treatment of another child is relevant to whether a course of conduct under subsection E has been established. *In re D.T.*, 34 S.W.3d 625, 636–37 (Tex. App.—Fort Worth 2000, pet. denied).

The evidence presented at trial showed both Andrea and Julian suffered from severe malnutrition. Pursuant to medical records admitted into evidence, Andrea, who was a four-year-old, was the average size of a one-year-old when admitted to Texas Children's Hospital on November 20. Julian, who was a two-year-old, was the average size of a six-month-old. Further, the evidence showed that Andrea's and Julian's conditions developed over time and no medical reason was found for their condition. Testimony indicated the children were at risk of developmental abnormalities as a result of the environment they were raised in. The physician testified she had no doubt the children's injuries were caused by adult acts or

omissions and without the Department's intervention Andrea and Julian would have died.

There is evidence in the record that Bonnie attempted to bring food home for Andrea and Julian and was physically abused if caught sneaking them food. There is also evidence that Bonnie stated the bruise on her face, which began the Department's involvement with the family, was caused by Jacob hitting her. Further, during the Department's involvement with the case, Bonnie made an outcry of sexual abuse by Jacob. There is also evidence that Ana suffered physical abuse in the home.

On appeal, Mother contends her poor judgment of remaining in abusive relationships and level of denial did not permit her to see the circumstances unfolding around her. At trial, Mother did not explain how her children ended up in their malnourished state. Additionally, while Mother presented evidence of domestic violence in her relationship with John, at trial she testified that Jacob was not abusive to her. Mother does not point to evidence in the record depicting an abusive relationship while the children were suffering the physical or emotional abuse at issue in these cases. Nor does Mother point to evidence to establish an excuse for her failure to provide proper nutrition or medical care for Andrea and Julian.

Based on the evidence presented, the jury could have decided the children were exposed to a course of conduct which endangered the children by Mother failing to provide them with proper nutrition which lead to their severe malnutrition. *See In re G.H.*, 2017 WL 4683925, at *8; *In re A.B.*, 412 S.W.3d at 601. Further, the jury could have decided from the evidence presented at trial established that Mother did not appreciate the seriousness of the situation with Andrea and Julian and endangered them by failing to provide them with appropriate medical care. *See In re S.H.A.*, 728 S.W.2d 73, 87 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (failure to

11

provide medical care can support finding of endangerment).

Reviewing all the evidence, in the light most favorable to the termination findings under subsection E, we conclude a reasonable fact finder could have formed a firm belief or conviction as to the truth of the findings that Mother endangered her children through her acts or omissions. *See In re J.O.A.*, 283 S.W.3d at 344. Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination of Mother's parental rights to Ana, Bonnie, Andrea, and Julian was warranted under section 161.001(b)(1)(E). *Id.* at 345. Accordingly, we conclude the evidence is legally and factually sufficient to support the section 161.001(b)(1)(E) finding as to Ana, Bonnie, Andrea, and Julian.

Having concluded that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under section 161.001(b)(1)(E) of the Texas Family Code, we need not discuss Mother's challenge to the court's finding under section 161.001(b)(1)(D) with respect to Ana, Bonnie, Andrea, and Julian. *See In re A.V.*, 113 S.W.3d at 362.

## C.    Predicate Termination Grounds – Sara

Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's judgment terminating her parental rights to Sara under sections 161.001(b)(1)(D), (E), and (M) of the Texas Family Code. Termination under subsection M may be ordered when the trial court finds by clear and convincing evidence that a parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)[.]" Mother contends the trial court's judgment terminating her rights to Ana, Bonnie, Andrea, and Julian should not withstand appellate review and accordingly, the termination as to Sara under subsection M should fail.

We have already concluded there was legally and factually sufficient evidence to support the termination of Mother's parental rights to Ana, Bonnie, Andrea, and Julian under subsection E. Additionally, the termination decree as to Ana, Bonnie, Andrea, and Julian based on subsections D and E was admitted into evidence and is included in the appellate record. We conclude the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(M). *See In re A.A.L.A.*, No. 14-15-00265-CV, 2015 WL 5437100, at *3 (Tex. App.—Houston [14th Dist.] Sept. 15, 2015, no pet.) (mem. op.).

Concluding that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under section 161.001(b)(1)(M) of the Texas Family Code, we need not discuss Mother's challenges to the court's findings under sections 161.001(b)(1)(D) and (E) with respect to Sara. *See In re A.V.*, 113 S.W.3d at 362.

## D.     Best Interest of the Children

Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings that termination of her parental rights was in the best interest of the children. We review the entire record in deciding a challenge to the court's best-interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2016).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the

present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (West Supp. 2016) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Holley*, 544 S.W.2d at 372; *In re D.R.A.*, 374 S.W.3d at 533.

### 1. The Desires of the Children

Mother acknowledges that there is testimony that the children do not wish to return to Mother. However, she indicates this testimony is not from the children. Mother also recognizes there is evidence the children have a strong bond with their current caregivers.

There is evidence in the record that Ana, Bonnie, and Andrea expressed a desire to remain with their current caregivers and not return to Mother. The girls made comments to this effect to a Department caseworker, a therapist, and their current caregivers. Mother does not argue this evidence should not have been admitted. Accordingly, it was within the purview of the fact finder to determine the weight and credibility of such testimony. *See In re K.A.S.*, 131 S.W.3d 215, 229 (Tex. App.—Fort Worth 2004, pet. denied).

The record also indicates Julian expressed a desire to stay with his current caregivers during therapy. Notably, Julian and Sara were very young at the time of

14

trial. When a child is too young to express her desires, the fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Ana, Bonnie, and Sara had been living with the Martin's for over a year at the time of trial. Both Mr. and Mrs. Martin testified that the girls were doing well and they hoped to adopt all three children. Andrea and Julian had been living with the Lee's for over a year, since being discharged from the hospital. Mrs. Lee testified it was in their best interest to remain placed with the Lee's because it provided stability, safety, love, and consistency. The Lee's testified they hoped to adopt both children.

A Department caseworker and the Child Advocate testified the children were happy in their current placements and wanted to remain there. The Child Advocate testified all the children had a very close and loving relationship with their respective caregivers. The caseworker testified the children were flourishing with their respective caregivers and she has no concerns about the children in the current placements. Evidence was also introduced to show how the current placements were meeting the physical and emotional needs of the children. The evidence supporting this factor weighs in favor of termination.

### 2.      Present and Future Physical and Emotional Needs of the Children

Mother admits the history of domestic violence weighs in favor of the best-interest termination finding. She further recognizes her inability to prioritize the children's needs is troubling. The testimony from the caseworker before the jury and at the bench trial was that the children's physical and emotional needs were being met in their current placements. Additionally, there was testimony that the children are thriving in their current placements and the current caregivers plan to adopt the

15

children. We therefore conclude the evidence supporting this factor weighs in favor of termination.

### 3. Present and Future Emotional and Physical Danger to the Children

The evidence supporting termination under one of the grounds listed in section 161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 27 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest). A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 263.307(b)(7), (12). The fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent. *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

Mother acknowledges her poor judgment in engaging in abusive relationships is a factor which weighs in favor of the best-interest finding. As discussed above, Mother engaged in a course of conduct which endangered the physical and emotional well-being of the children. Andrea and Julian were severely malnourished when removed from Mother's care. Further, there is evidence their condition was the result of abuse and neglect and that Mother did not recognize the severity of their condition. Additionally, there is evidence in the record of emotional and physical abuse suffered by Ana and Bonnie in the home. While the evidence does not show emotional or physical abuse of Sara in the home, the environment was one which endangered her well-being and for which Mother has not accepted any responsibility. *See In re E.C.R.*, 402 S.W.3d at 248.

However, Mother posits that the future emotional and physical needs of the children may be best served by a relative placement. There is evidence in the record

16

that Mother suggested Grandmother and Grandfather as potential relative placements. Based on testimony from the Department's witnesses, both Grandmother and Grandfather observed Andrea and Julian in their malnourished condition. Neither Grandmother nor Grandfather was reported to think anything was wrong with the condition of the children. Accordingly, the Department did not approve either relative for a relative placement.

Based on the evidence in the record, we conclude this factor weighs in favor of termination being in the children's best interest. Further, the evidence weighs against placement with maternal relatives.

### 4. Parental Abilities of Persons Seeking Custody

We may consider a parent's past performance in evaluating their fitness to provide for the children and the trial court's determination that termination would be in the children's best interest. *See In re C.H.*, 89 S.W.3d at 28; *see also* Tex. Fam. Code Ann. § 263.307(b)(12). Although evidence of past misconduct or neglect alone may not be sufficient to show present unfitness, a fact finder may measure a parent's future conduct by her past conduct and determine that it is in the children's best interest to terminate her parental rights. *See In re A.N.D.*, No. 02–12–00394–CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.). As discussed herein, the evidence offered showed that while in Mother's care Andrea and Julian became severely malnourished. There was no medical evidence which would explain their condition and their doctor testified their condition was the result of abuse and starvation. Based on the evidence presented, Mother contributed to or failed to recognize the severity of the children's condition.

Mother contends the current caregivers are appropriate and nurturing. Mother requests that maternal aunt be reconsidered by the Department as a possible placement. Mother cites to no evidence in the record discussing the parental abilities

17

of maternal aunt or evidence that placement with maternal aunt would be in the best interest of the children. Further, later in her brief, Mother admits that the maternal relatives cannot provide appropriate accommodations.

The evidence of Mother's parental abilities and the parental abilities of the children's current caregivers weighs in favor of the best-interest finding and termination.

### 5. Programs Available to Assist Persons Seeking Custody

Mother contends she performed the services required under her service plan, but she needs to avail herself to more intensive programs directed at domestic violence. A parent's compliance with a service plan is a factor a fact finder should consider in a determination of best interest, but is not determinative in a sufficiency review. *See In re M.G.D.*, 108 S.W.3d 508, 514–15 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). While the evidence shows Mother completed her service plan, the Department's witnesses testified such should not be considered grounds for reunification of the children and Mother. The caseworker testified that the purpose of a service plan is to allow the parent to work to alleviate the concerns of why the children came into the Department's care. She further testified even after working her services Mother did not perceive a problem with the children's condition. The caseworker testified reunification is not a viable option in this circumstance as Mother has not taken responsibility for the children's condition. Despite Mother's compliance with her service plan, the fact finder could have determined reunification with Mother was not in the best interest of the children.

### 6. Plans for the Children by the Parties Seeking Custody

Mother acknowledges the children are properly placed and the caregivers should be afforded all accolades. She recognizes the current caregivers have gone

above and beyond and plan to provide the stability and permanency the children need. The evidence shows all five children are in a placement where their needs are being met. Both the Martin's and Lee's testified they hoped to adopt the children currently placed with them.

While the five children are separated into two placements, the evidence showed the caregivers continuously arrange for the siblings to be together for visits, holidays, and have even gone on vacation together. The caregivers testified they intend to continue to do this if allowed to adopt the children. The evidence showed the caregivers have been active in helping the children receive needed therapy related to the physical and emotional abuse suffered. The plans for the children support the best-interest findings and weigh in favor of termination.

### 7. Stability of the Home or Proposed Placement

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.–San Antonio 2014, no pet.). A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in the best-interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best-interest determination. *See In re C.H.*, 89 S.W.3d at 28.

Mother concedes the children are in safe and stable environments and that the maternal relatives cannot provide appropriate accommodations. The evidence presented at trial supports Mother's concessions that the children's current home and proposed placement with the Martin's and Lee's is stable.

19

### 8. Acts or Omissions of the Parent which May Indicate the Existing Parent-Child Relationship is Inappropriate

Mother acknowledges the evidence relevant to this factor weighs in favor of the best-interest termination finding. As discussed herein, the evidence showed that two of the five children were severely malnourished when removed from Mother's care. Additionally, there was evidence of abuse of Ana, Bonnie, Andrea, and Julian. The condition of Andrea and Julian and abuse of the other children endangered all five children. *See In re E.C.R.*, 402 S.W.3d at 248. Further, Mother's failure to recognize the severity of the situation suggests her relationship with the children is inappropriate.

### 9. Any Excuse for the Parent's Acts or Omissions

Mother admits there is no evidence showing an excuse for her acts or omissions. We agree. The evidence as to how Andrea and Julian came to be in their malnourished condition is limited due to Mother invoking her right against self-incrimination. However, there is evidence in the record showing their condition did not develop overnight such that Mother should have been aware and sought medical attention. This factor weighs in favor of termination.

### 10. Summary

In sum, the record contains sufficient evidence to support the best-interest findings based on Mother's endangerment of the children while in her care, her failure to acknowledge a problem with the care the children, even after completion of her services, and the stability of the children's current placements and their desire to remain there. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in

20

the children's best interest. We overrule Mother's challenges to the best-interest findings.

### E.    Conservatorship

Mother also contends the trial court erred in naming the Department the managing conservator of the children. We review a trial court's appointment of a non-parent as sole managing conservator for abuse of discretion and reverse only if we determine the appointment is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

Mother contends a parent shall be named a child's managing conservator unless the court finds that such appointment is not in the best interest of the child because it would "significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 153.131(a) (West 2014). In the present case, the trial court made such finding with respect to all five children. Additionally, the trial court found it would not be in the best interest to appoint a relative of the children as managing conservator.

Mother acknowledges the Department has found a safe and stable placement for all five children. However, Mother contends the best interest of the children would be served by a continued relationship with their maternal relatives and that placement with a maternal aunt should be further considered. Mother does not explain the nature of the relationship which should exist between the children and maternal relatives or argue that any particular maternal relative should have been appointed sole managing conservator. Additionally, Mother does not cite to any evidence in the record establishing the appointment of a particular relative as managing conservator would have been in the best interest of the children.

In determining issues of conservatorship and possession, the best interest of

the child is the primary consideration. Tex. Fam. Code Ann. § 153.002 (West 2014). "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, [the Department], or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code § 161.207(a) (West Supp. 2016). Having terminated both parents' rights, the trial court was required to appoint the Department, or another permissible adult or agency as the children's managing conservator. *See In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The Department sought sole managing conservatorship in the present case. The Department introduced evidence demonstrating how its sole managing conservatorship of the children would be in their best interest. Specifically, the Department introduced evidence of the stability of the children's current placement, the children's desires to remain there, and the ultimate plan of the Department to have the children adopted by the families with whom they were currently placed. Related to the maternal relatives, there was evidence that Grandmother and Grandfather had seen Andrea and Julian in their emaciated condition and taken no action. In fact, a Department caseworker testified that Grandmother did not think anything was wrong with Andrea and Julian. As to maternal aunt, the evidence in the record was that she lives with Grandmother. However, there is no evidence about her parental fitness, plans for the children, or even evidence of her desire to have the children placed with her.

Based on the evidence in the record, we conclude the trial court did not abuse its discretion in appointing the Department as sole managing conservator of the children. We overrule Mother's challenges to the legal and factual sufficiency of the evidence to support the Department's appointment as sole managing conservator.

## CONCLUSION

The trial court's judgments are affirmed.

/s/     John Donovan
        Justice

Panel consists of Justices Christopher, Donovan, and Jewell.